Stanford TATE and wife, Emma
Tate, Appellees,

v.

The COUNTY OF MONROE, Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Nov. 28, 1978.

Certiorari Denied by Supreme Court
March 12, 1979.

Robert J. Ames, Asst. Atty. Gen., Nashville, Thomas W. Patton, Sp. Trial Counsel, Knoxville, Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel, for appellant.

J. Curwood Witt, Jr., Madisonville, for appellees.

## OPINION

PARROTT, Presiding Judge (E.S.).

The plaintiffs, Stanford Tate and his wife, brought this inverse condemnation suit against Monroe County alleging damages from the construction of the Madisonville By-Pass. Plaintiffs owned and operated a business, Tate Builders Supply, which originally fronted on old Highway 411. With the construction of the by-pass, old 411 became a service road which was completely terminated to the north of the plaintiffs' property. The only ingress and egress to the new 411 by-pass was a ramp built to the south. There was no property of the plaintiffs physically taken or appropriated.

Because of the presentation of incompetent evidence, a mistrial was declared initially. The second trial in circuit court resulted in a jury verdict for the plaintiffs. The plaintiffs were awarded $50,000.00 in actual damages and $18,034.11 for expenses and attorney fees.

Final judgment was signed on March 18, 1977 and entered on May 18, 1977. The defendant made a timely motion for new trial which was filed on June 16, 1977. An amended motion for new trial was filed on September 16, 1977. In late September the defendant drafted, signed, and presented to the court an order overruling the motion for new trial. This order was taken under advisement and on December 1, 1977, was entered by the court. The order granted the defendant 30 days to file an appeal bond and 90 days to file the bill of exceptions. The defendant contends that he did not receive notice of the filing of this order until mid-March 1978 at which time the plaintiffs wrote the defendant demanding payment. On March 21, 1978, a "motion to set aside order overruling motion for new trial," which had been prepared by the defendant, was made pursuant to Rule 60 of Tennessee Rules of Civil Procedure. This motion was sustained by the circuit judge and on March 27, 1978, a new order overruling the motion for new trial was entered. This order granted the defendant 30 days from March 27, 1978, to perfect an appeal and file the bill of exceptions.

Both parties have appealed. The plaintiffs assign as error: (1) the setting aside of the original order overruling the motion for new trial, and (2) the granting of 30 days in which to file the bill of exceptions after the original 90-day period had expired. The plaintiffs also move this court to dismiss the appeal and strike the bill of exceptions.

Rule 60 specifies the grounds upon which relief from judgments and orders may be granted. This rule sets out two procedures, motion and independent suit, by which a party can attain such relief. Rule 60.02(1) provides that a court may relieve a party from a final judgment or order for the reason of "mistake, inadvertence, surprise or excusable neglect."

The Supreme Court has recently held that the failure of a clerk to provide counsel with a copy of the order overruling the motion for a new trial or to notify the counsel of the existence of such an order constitutes excusable neglect. *Jerkins v. McKinney*, 533 S.W.2d 275, 281 (Tenn.1976).

*Jerkins* was a case in which the respondent had brought an independent suit under Rule 60 seeking relief from a prior judgment. The court refused to allow the respondent the use of an independent suit where other alternatives for relief, such as a Rule 60 motion or writ of error, were available. The Court stated in describing when an independent suit under Rule 60 could be used: "It must . . . appear that the situation in which the party seeking relief finds himself is not due to his own fault, neglect or carelessness." In other words, the petitioning party must not be negligent in creating the situation from which relief is sought. If he is, no independent suit under Rule 60 can be maintained.

The Court in *Jerkins* did not specifically deal with the issue concerning negligence of the moving party when seeking relief by a Rule 60 motion. They did state, however, that Rule 60 motions could provide relief "not only for mistake, etc. of the moving party, but also from that of other parties to the action . . . ." Negligence on the part of the moving party, therefore, appears to be precisely the type of error a Rule 60 motion is designed to relieve.

For the reasons above we reject the assignments of error charged by the plaintiff. We hold that the trial judge did not err in sustaining the motion to set aside the original order overruling the motion for new trial. The Rule 60 motion is made within the one-year time limit set out in Rule 60.02(1), Tenn.R.Civ.P., and failure to notify the defendant comes within the type of error set out in Rule 60.02(1). We further overrule the plaintiffs' motion to dismiss this appeal and to strike the bill of exceptions.

The defendant has appealed from the jury verdict and contends the court erred in: (1) overruling appellant's motion for summary judgment; (2) overruling appellant's motion to dismiss made at the close of appellees' proof; (3) admitting into evidence the traffic survey and allowing same to be used as the basis for determining damages, all over appellant's objections; (4) admitting into evidence over appellant's ob-jection testimony as to the ramp area being difficult and hazardous; (5) refusing to allow appellant to examine fully its expert witness and thereby rebut the proof tendered by appellees; and (6) awarding attorneys' fees without factual support or a hearing as requested by the appellant.

■ The circuit judge was correct in overruling the defendant's motion for summary judgment and dismissal of the action. Where the trial court's denial of a motion for summary judgment is predicated upon the existence of a genuine issue of fact, the overruling of that motion is not reviewable on appeal where there has been a judgment rendered upon a trial of the merits of the case. *Boyles Galvanizing and Plating Co. v. Hartford Accident and Indemnity Co.*, 372 F.2d 310 (10th Cir., 1967); *William W. Honeycutt v. The Brass Register, Inc.* (Unreported case by Eastern Section, Court of Appeals, Hamilton County, 1975).

■ The motion for dismissal made by the defendant appears to be predicated on the general proposition that the plaintiffs are not entitled to recover inasmuch as no portion of their property has been taken and there is no damage or injury peculiar to them. The position of the defendant in this matter is in error and the circuit court was correct in overruling this motion. T.C.A. 23–1537 speaks in terms of "property or property rights" in determining damages to which an owner is entitled to recover. It is the law in this state that the right of an abutting landowner to ingress and egress exists not only to and from the property to the street but also over and on the street to the next intersecting street. Such is called an easement of way or an easement of access and is clearly a property right which cannot be taken or impaired without compensation to the owner. *Illinois Central R. Co., et al. v. Moriarity*, 135 Tenn. 446, 186 S.W. 1053 (1916); *East Park United Methodist Church v. Washington County*, 567 S.W.2d 768 (Tenn.App.1977); *Graham v. Hamilton County*, 224 Tenn. 82, 450 S.W.2d 571 (1969).

For the reasons stated above, the defendant's first two assignments of error are

overruled. This Court further overrules assignments of error four, five and six.

■ Evidence as to the ramp area, which was in fact the plaintiffs' only means of ingress and egress, was proper and the court was correct in overruling the defendant's objection thereto. In *Shelby County v. Barden*, 527 S.W.2d 124 (Tenn.1975), the Supreme Court quoted with approval from *Brookside Mills, Inc. v. Moulton*, 55 Tenn. App. 643, 404 S.W.2d 258 (1965), as follows:

"The fact that the property has other access, or is given other access in the course of construction would be a material factor to be taken into consideration in determining the before and after value . . . and, consequently, the value of the access taken."

Evidence which would tend to show that a newly constructed access enhanced the property value is admissible. So is evidence, such as that presented here, which shows the access to be difficult and hazardous and, therefore, adversely affects the property value.

The trial court did not err in sustaining the plaintiffs' objection to the question asked by the defendant in examining the expert witness. These questions appear irrelevant and immaterial and, at most, failure to allow such was harmless error.

■ This Court sustains assignment of error number three. As stated before, this state allows recovery where "the property right taken is the right of access to or over a public street." *Stokely v. Southern Railway Co.*, 57 Tenn.App. 271, 279, 418 S.W.2d 255, 260 (1967). The correct measure of damages in an inverse condemnation case is the same as that in any condemnation suit, the difference between the fair market value of the plaintiff's property prior to the taking or impairment of the access and its value after the taking. *Stokely v. Southern Railway Co.*, supra; *Brookside Mills, Inc. v. Moulton*, 55 Tenn.App. 643, 404 S.W.2d 258 (1965); *E. Park United Methodist Church v. Washington County*, supra.

■ At the trial below testimony relating to traffic statistics was admitted to show the amount of traffic which flowed over the old 411 prior to construction and the amount of traffic flowing over the new 411 by-pass and old 411 after construction. These statistics show that approximately 54 percent of the traffic traveled on old 411 while 46 percent of the traffic traveled on the by-pass. Apparently the trial judge was of the impression the diversion of traffic was to be considered in estimating damages because when the attorney for the plaintiff moved to strike this testimony, the trial judge instructed the plaintiff to ask the witness: "What portion of this is attributable to diversion of traffic to the by-pass?" When the plaintiff's attorney refused, the judge on his own behalf, asked: "What portion of the $59,700.00 do you attribute to the diversion of traffic to the by-pass?" These percentages were subsequently used by the real estate appraiser to apportion damages. This was error.

There can be no recovery based solely on diversion of traffic because the property owner has no right to insist on the entire volume of traffic. The state has the authority to control the flow of traffic and the exercise of this authority does not justify compensation. *State v. Rascoe*, 181 Tenn. 43, 178 S.W.2d 392 (1944). This does not, however, mean that the loss of access and diversion of traffic must be apportioned in estimating the amount of damages suffered by the injured party.

To allow testimony as to statistical data of the amount of traffic flowing over a particular route is to naturally tie such statistics to damages and damages to diversion of traffic. The measure of damages as stated before is the difference in value of the property before and after the taking of the impairment. If the closing of the access on the north side of the plaintiffs' property is found to cause this difference in value, then the difference is recoverable. Because diversion of traffic is a necessary and natural result of the elimination of one access to the plaintiffs' property, there is no need to apportion the amount of damages to these two aspects. We hold that the evidence admitted as related to traffic flow

is inadmissible and reversible error. The cause is remanded for a new trial not inconsistent to the principles set forth in this opinion.

Let the costs incident to this appeal be taxed to Stanford Tate and wife. All other costs will abide the outcome and be taxed in the discretion of the court below.

SANDERS and GODDARD, JJ., concur.